**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**LATICE SUTTON**                                                                                    **PLAINTIFF**

**V.**                                                          **CIVIL ACTION NO. 2:24-CV-124-KS-MTP**

**FORREST COUNTY,**                                                                          **DEFENDANT**
**MISSISSIPPI**

**MEMORANDUM OPINION AND ORDER**

This cause comes before the Court on the Motion for Summary Judgment [42] filed by Defendant, Forrest County, Mississippi in this case that arises out of Plaintiff's employment with Defendant. The motion has been fully briefed. Having reviewed the record, the parties' submissions, and relevant legal authority, the Court finds the motion will be denied because genuine issues of material fact exist.

**I.    BACKGROUND**

Plaintiff, Latice Sutton, brought claims against her former employer, Defendant, Forrest County, Mississippi (the "County") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"); the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 ("ADA"); and the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 ("FMLA"). Sutton claims the County violated Title VII by firing her because she made a claim of racial discrimination and making an EEOC claim. She also alleges the County violated the ADA by taking adverse action against her because of her disability, and the FMLA by denying her leave request and firing her rather than granting her request.

**A.    Factual Background**

Plaintiff, who is a black female, began working for the County on July 8, 2020 in the accounts payable department. [13] at ¶¶ 28, 31. Her supervisors and managers were the County's

Comptroller, Penny Steed, a white female, and the City Clerk Lance Reid, a white male. *Id.* at ¶ 29. In January 2022, Sutton was promoted to Deputy County Administrator (another department in the county) with a significant raise in pay. [42-3] at 42:8-44:5; Ex. 1 at 28. After a brief departure in 2022, Plaintiff returned to the finance department in 2023. (Reid Dep. 50:15-51:11, 54:21-25). By November of 2023, both Steed and Plaintiff had major life stressors, and their relationship began to deteriorate. (Reid Dep. 57:4-14).

Plaintiff discussed with Reid problems with Steed's behavior, but Plaintiff felt Reid had not taken sufficient action to address the issue. [45-2] at ¶ 3. So, on April 28, 2024, Plaintiff emailed Teri Bell, the President of the Forrest County Board of Supervisors, concerning an alleged racist incident involving Steed that occurred earlier that month; this email was also forwarded to Mr. Reid. [45-2] at ¶ 2; [42-2].[1] On April 30, 2024, Plaintiff informed Reid that she had also contacted the EEOC to file a discrimination charge against Forrest County concerning Steed's actions and then reluctantly agreed to withdraw the grievance and the EEOC charge when Reid told her Steed was retiring. [45-2] at ¶ 6.

With Steed retiring, the County advertised the Comptroller vacancy, and Sutton informed Reid that she wished to be considered for the position, as well as the position of Assistant Comptroller. [42-3] 85:13-18; [45-2] at ¶¶ 7, 9. Reid scheduled an interview with Sutton but did not go through with it. [45-2] at ¶ 9; [42-3] 109:6-13. Reid made the decision to hire Stephen May as the Comptroller, which Reid contends was because May had been the CFO for the Forrest County School District and had certain suitable experience. [42-3] 85:21-24. Reid informed Sutton of that decision and also told her that someone else would be hired as Assistant Comptroller in a

---

[1] The content of the complaint against Steed is not at issue in this motion. As such, for purposes of this motion for summary judgment, the parties appear to have assumed, as the Court will, that the complaint against Steed involved an incident of racial discrimination.

2

meeting on June 24, 2024. [42-3] 109: 11-16; [45-2] ¶¶ 12-13.

Sutton claims that during a meeting on June 24, 2024, Reid told Sutton that she did not get the Comptroller position because her and Steed's issues for the past two months had left him in a difficult situation and he doesn't deal well with drama. [45-2] at ¶ 13, p. 3. Sutton avers that Reid also told her in the meeting that he was hiring new people into the Comptroller and Assistant Comptroller positions, and if those individuals wanted a "fresh start" with employees in the finance department, by bringing in their own staff, he was going to let them do that. *Id.* Sutton understood Reid's referral to drama was her discrimination complaint against Steed, which she felt was why he didn't hire her for either position and that those hired were free to fire Sutton if they wished. [45-2] at ¶ 14.

Once the meeting was over, Sutton claims that she went home and suffered from a mental health spiral because of the meeting. [45-2] at ¶ 15. The next morning Sutton sent Reid a lengthy text, wherein she stated, in relevant part:

> Lance, I am in severe pain, both physically and mentally and need to take sick leave today; also I hereby request simultaneous FMLA leave, starting today. I must seek treatment for the psychological work injury sustained in your office yesterday, which is the direct catalyst of the sudden crisis I'm in—stemming from the ongoing hostile work environment I've endured and reported to you since 2023. . . .
>
> . . . The concerted effort made to inflict permanent injury for voicing my grievances to someone else in leadership is deeply disturbing. . . .
>
> I feel a strong and compelling need to also request a complete copy of my personnel file, in light of being informed—for the very first time—that I am part of "of drama in the Finance Department, that's been occurring for the last couple months" which I am unaware of; unless you're referencing me reporting to you a legitimate complaint of an escalation of a harassing and hostile work environment.

[42-6].

After receiving the text, Reid sent Sutton a termination letter later that morning. [45-2] at ¶ 16. The letter is best read in its entirety, but for the sake of brevity it will be summarized. After

3

three paragraphs of laying out the events of the previous few months involving Sutton, which includes, but is not limited to, the formal complaint against Steed and Sutton's claimed disability, Reid concludes with:

> Early this morning I received another text/email with many self-serving misstatements about the content of our meeting and now, for the first time, that your "mental condition" and "psychological work injury" was caused or affected by our conference yesterday. . . . I cannot continue to be intimidated or manipulated by your claims of physical or emotional illness or conditions, statements about employment claims and demands for "titles and more money." . . . You are hereby formally released from your employment with Forrest County.

[42-7]. Nowhere in the letter does Reid mention that Sutton's termination was because of her poor performance on the job.

Sutton asserts that during her employment with the County, Reid did not issue any performance write-ups, oral counseling, or give any indication that Reid thought her performance was not good. [45-2] at ¶ 10. Reid testified that he did not have any specific examples of performance issues—only that beginning in April, they started having "a few issues with people coming in" to report non-payment. [42-3] 80:19-25. But he cannot name any specific person who came in. [42-3] 81:2-5. Sutton is not aware of having completely failed to pay any bills or otherwise performing unacceptably during her time at the County. [45-2] at ¶ 11.

There is no written documentation of any issues with Sutton's performance on the job. [42-3] 81:7-82:4. It was not until after Sutton was terminated that Reid found out more specifically that she had not been paying certain bills. [42-3] 82:19-24; 84:2-14. Reid stated that if he had known about these issues at the time they were occurring, he would have written up Sutton and given her a chance to explain. [42-3] 83:11-21. Reid admitted that, because he learned about the payment issues after Sutton was terminated, the issues could not have impacted his decision to terminate her. [42-3] 83:6-8.

4

Reid took issue with the statement in Plaintiff's text that she had sustained a "psychological work injury" in his office the day before and felt it was sufficient grounds for termination. [42-3] 120:11-19; 121:13-18. As he explained: "She basically just accused me of inflicting a psychological work injury on her, and I mean, for her to interpret the talk that I had with her that day as a psychological work injury, at that point I just decided that I don't think that she and I can work together anymore." [42-3] 17:22.

### B. Procedural History

Plaintiff filed her initial Complaint on August 13, 2024 and has amended once. [1] [13]. In her Amended Complaint, Plaintiff asserts five claims against Forrest County: (1) retaliation under Title VII; (2) interference under the FMLA; (3) retaliation under the FMLA; (4) retaliation under the ADA; and (5) discrimination under the ADA. [13] at ¶ 87-136. Following the discovery period, Defendant now brings this Motion for Summary Judgment on all claims.

## II.   DISCUSSION

### A. Legal Standard

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). The moving party bears the initial burden of showing there is no genuine issue for trial, and it may do so by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir.), *cert. denied,* 506 U.S. 832 (1992) (quoting *Latimer v. Smithkline & French Labs.*, 919 F.2d 301, 303 (5th Cir. 1990)). "The evidence is viewed in the light most favorable to the non-movants with all reasonable inferences drawn in their favor." *Villarreal v. VitalCore*, No. 1:24-CV-99-HSO-BWR,

2025 WL 1703645, at *6 (S.D. Miss. June 18, 2025) (quoting *United States Sec. & Exch. Comm'n v. Kahlon*, 873 F.3d 500, 504 (5th Cir. 2017)).

If the moving party meets this burden, the nonmoving party who will have the burden of proof at trial must go beyond the pleadings and come forward with summary judgment evidence establishing the existence of a genuine issue; that evidence must be such that if introduced at trial it would suffice to prevent a directed verdict against the nonmovant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986). Summary judgment is mandatory "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011) (quoting *Celotex*, 477 U.S. at 322).

### B. Sutton's Retaliation Claims

#### 1. Applicable law

Sutton claims retaliation under Title VII, FMLA, and the ADA. The County argues that Plaintiff cannot establish a *prima facie* case on any of these claims. A retaliation claim under each of the applicable statutes is analyzed the same way. To establish a *prima facie* case of retaliation, a plaintiff must show: "1) that she engaged in a protected activity; 2) that an adverse employment action occurred; and 3) that a causal link existed between the protected activity and the adverse action." *See Wheat v. Fla. Par. Juv. Just. Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016) (describing same *prima facie* case for retaliation under Title VII and the FMLA ); *Feist v. La. Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (same *prima facie* case for retaliation under the ADA).

After the plaintiff makes out a *prima facie* case, if there is no direct evidence of retaliation on these three types of claims, they are evaluated under the long-established *McDonnell Douglas* burden-shifting framework.[2] *See Wheat*, 811 F.3d at 705 (5th Cir. 2016) (explaining that both Title VII and the FMLA are analyzed under the *McDonnell Douglas* burden-shifting framework); *Mueck v. La Grange Acquisitions, L.P.*, 75 F.4th 469, 488 (5th Cir. 2023), as revised (Aug. 4, 2023) (explaining that under the ADA, a retaliation claim not supported by direct evidence is evaluated under *McDonnell Douglas*). Under the *McDonnell Douglas* framework, once a plaintiff establishes a *prima facie* case, "the burden shifts to the employer to 'articulate a legitimate, nondiscriminatory reason' for its actions," after which the plaintiff bears "the burden to prove that the employer's explanation was a pretext for [retaliation]." *Mueck*, 75 F.4th at 483 (quoting *Thompson v. Microsoft Corp.*, 2 F.4th 460, 470 (5th Cir. 2021) (citation omitted)).[3]

### 2. Evidence of Causal Link

The County argues that Sutton cannot establish a *prima facie* case for retaliation under Title VII, ADA, or the FMLA. In doing so, the County does not take issue with the first two elements, i.e., protected activity and an adverse employment action. Rather, the County argues, as to each cause of action, Sutton cannot establish the third element, i.e., a causal link between her termination and any protected activity, because the County has shown Sutton was terminated for legitimate reasons. [43] at pp. 6, 10, 13.

With this argument in mind, the Court must determine whether Sutton has established a causal link between her protected activity and her termination.[4] The standard for establishing the

---

[2] *See McDonnell Douglas Corp. v Green*, 411 U.S. 792, 802-804 (1973)).
[3] This burden-shifting framework will be addressed more in context in the discussion below.
[4] The Court is addressing only, as the County has, *the termination* as the "adverse employment action." But Sutton points out in her response that this is not the only theory of her case, as there are more adverse employment actions at issue that were raised in the Amended Complaint. In addition to the termination, Sutton claims the following additional adverse actions occurred: (1) Reid restructured the department to give Sutton a decreased role; (2) Reid refused to hire/promote/transfer Sutton to either the Comptroller or Deputy Comptroller position; and (3) in the meeting on June

7

"causal link" element of the plaintiff's *prima facie* case is much less stringent than the causation needed to establish the ultimate question of fact—whether the conduct protected by Title VII was a "but for" cause of the adverse employment decision. *See Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996) (citing *McDaniel v. Temple Indep. Sch. Dist.*, 770 F.2d 1340, 1346 (5th Cir.1985)). To establish the causal link, a plaintiff needn't prove that his protected activity was the sole factor motivating the employer's adverse employment action. *See Mauder v. Metropolitan Transit Auth.*, 446 F.3d 574, 583 (5th Cir. 2006). To establish the causation element, the plaintiff must present either "direct evidence of retaliation," or "circumstantial evidence creating a rebuttable presumption of retaliation." *Washburn v. Harvey*, 504 F.3d 505, 510 (5th Cir.2007); (quoting *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 414–15 (5th Cir. 2003) *overruled on other grounds by Smith v. Xerox Corp.*, 602 F.3d 320, 328 (5th Cir. 2010); *Fierros v. Texas Dep't of Health*, 274 F.3d 187, 192 (5th Cir.2001).

### a. Direct evidence of retaliation

The Fifth Circuit has defined "direct evidence" as evidence which, "'if believed, proves the fact [of intentional retaliation] without inference or presumption.'" *Fierros*, 274 F.3d at 195 (quoting *Brown v. East Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993). "In the context of Title VII, direct evidence includes any statement or document which shows on its face that an improper criterion served as a basis—not necessarily the sole basis, but a basis—for the adverse employment action." *Fabela*, 329 F.3d at 415 (citations omitted), "Direct evidence of discrimination can negate the need for proving discriminatory purpose with the *McDonnell Douglas* test." *Gaalla v. Brown*, 460 Fed. App'x 469, 480 (5th Cir. 2012); *see also Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1984) (stating "the *McDonnell Douglas* test is

---

24, Reid implicitly threatened Sutton's job. [46] at p. 8. Because the County does not address any of these other alleged means of retaliation, they are not addressed herein and remain viable theories.

inapplicable where the plaintiff presents direct evidence of discrimination.").

Sutton says there is direct evidence of unlawful retaliation, pointing to both the termination letter and statements made during the June 24 meeting. First, we address the termination letter. Sutton points out that the letter specifically describes examples of Sutton's "claims" that justified termination:

> (1) "about two months ago you made a formal complaint about Penny"
>
> (2) "you had already filed an E.E.O.C. claim against the County"
>
> (3) "two (2) weeks ago you sent me a lengthy text message advising me of emotional/mental issues ... [and an] 'A.D.A' disability in order to attempt to provide reasonable accommodations"
>
> (4) "Early this morning I received another text/email"
>
> (5) "Later you sent Wendy a request for your personnel file and 'F.M.L.A.' papers"

[42-7].

The letter goes on: "I cannot continue to be intimidated or manipulated by *your claims of physical or emotional illness or conditions, statements about employment claims* and demands . . . ." *Id.* (emphasis added). And finally, Reid states, "You are hereby formally released from your employment with Forrest County." *Id.* The content and meaning of the letter was addressed at Reid's deposition where the question was posed, in relevant part,

> Q: Basically I am seeing an intro paragraph that says here is the kind of reasons that I have for firing you. I see a final paragraph that says here's what I'm doing about it. I'm going to fire you. And then in between that I see these 3, 4½--3½ paragraphs that I'm reading as examples of what's in that first paragraph of false allegations, the reasons for termination. Am I reading that right?
>
> A. Yeah, I think that's accurate.

[42-3] 126:9-17.

Next, we address the meeting of June 24. Sutton contends that some of Reid's statements made in that meeting are further direct evidence. When Sutton asked why the restructuring took place and why she was not given the Comptroller or Deputy Comptroller job, Reid told her that it was because of her "drama" that happened "two months" earlier. Sutton urges that by specifically referencing "two months," Reid was not referring to the initial friction between Steed and Sutton, or their personal stressors, because those issues began over six months earlier. What happened "two months" earlier than the June meeting was Sutton's written race discrimination complaint to Teri Bell and the EEOC charge, both of which occurred in April.

In its Reply, the County fails to address this purported direct evidence. Notwithstanding, even if the County were to deny that Reid made any such statement in the meeting or were to argue the true meaning of any statements made in the letter or the meeting, when deciding whether Sutton established the element of causation under the direct evidence path, this Court "must refrain from weighing the evidence and preemptively determining whether and which inferences a reasonable jury is likely to draw." *Fabela*, 329 F.3d at 416. "Instead, in deciding which evidentiary framework applies, the district court must ask whether the direct evidence truly standing alone, is sufficient to support the conclusion that a nexus exists between the protected activity and the adverse employment action." *Id*. (citing *Barrett Computer Servs., Inc. v. PDA*, *Inc*., 884 F.2d 214, 218 (5th Cir. 1989)). Further, the Court must view the record as a whole and view the evidence in the light most favorable to Sutton. *See Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150 (2000) (citing *Matsushita Elec. Industrial Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)); *Kahlon*, 873 F.3d at 504.

The Court finds that, upon the evidence presented in the termination letter and the discussion during the meeting, a jury could find that Reid's motivation for terminating Sutton

was at least in part retaliatory. Sutton has presented sufficient material direct evidence of retaliation to allow a reasonable jury to decide in her favor. Hence, this evidence precludes summary judgment because it presents a genuine issue of material fact regarding whether "retaliatory animus in part motivated or was a substantial factor in the contested employment action." *Fierros*, 274 F.3d at 195 (citing *Brown*, 989 F.2d at 861). Accordingly, summary judgment will be denied.[5]

### b. Circumstantial evidence of retaliation

Even if this Court were to find that the termination letter and statements in the June 24 meeting were not direct evidence, such evidence is sufficient circumstantial evidence to establish a causal link. Not only are the statements themselves circumstantial evidence of causation, but also the timing of the termination infers causation. But "[s]uch temporal proximity must generally be 'very close.'" *Feist*, 730 F.3d at 454 (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)). The Fifth Circuit has found, "a time lapse of up to four months may be sufficiently close" to satisfy the causal connection. *Id.* (citing *Evans v. Houston*, 246 F.3d 344, 354 (5th Cir. 2001)).

Here, as Sutton points out, the timing is "virtually instantaneous." [46] at p. 12. On June 24, Reid told Sutton that he was not firing her at that time but he would let the new Comptroller and Deputy Comptroller make a fresh start by releasing her if they wanted to. Then, on the morning of June 25, Sutton sent a text in which she references an ongoing hostile work environment, mentions voicing her grievances to someone in leadership, and requests FMLA

---

[5] Neither party discusses the burden shifting that occurs in a direct evidence case. Once the plaintiff submits direct evidence of an employer's retaliatory motive, the "'burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor.'" *Fierros*, 274 F.3d at 192 (quoting *Brown*, 989 F.2d at 861). Because it has not been raised or briefed, the Court will not engage in further analysis.

11

leave due to her ADA disability. Within hours, Reid sent the termination letter. Sutton's text containing arguably protected activity was the only thing that happened between Reid's statement that he was not firing her and him changing his mind and firing her. This timing alone may be enough for a jury question on *prima facie* causation.

As for the timing between the EEOC charge and written complaint to Teri Bell about Steed (Title VII protected activities) and the termination, that period is around two months. Also, shortly after Sutton engaged in these protected activities, Sutton contends an earlier adverse employment action occurred, i.e., the planned restructure and hiring new individuals rather than promote her.[6] Sutton urges that the non-promotion, the meeting wherein Sutton was told she could be fired - indeed, the entire chain of events - makes a compelling case for retaliation timing. The Court agrees.

The Court finds that when viewing this evidence in the light most favorable to Sutton, she has carried her burden to satisfy the less strict standard for establishing causation at the summary judgment stage and establish a *prima facie* case. Next, under the *McDonnell Douglas* framework, the burden shifts to the County to articulate a legitimate, nondiscriminatory reason for the termination. *See Mueck*, 75 F.4th at 483.

### i. Legitimate Non-Discriminatory Reason

The County posits that Reid fired Sutton based on poor performance and for accusing Reid of causing her "psychological injury." [43] at p. 7. The County contends these reasons are sufficient, and because Sutton has presented no evidence to indicate otherwise, the claim fails as a matter of law. *See id.* Simply stating a purported legitimate reason for the termination, however, is not the end of the story. Once the County meets its burden of production, which the

---

[6] The County does not address any adverse employment action other than the termination. The Court will then assume without deciding that these qualify as adverse employment actions.

Court finds it has, the burden will then shift back to Sutton.

### ii. Evidence of Pretext

Because the County articulated legitimate, non-retaliatory reasons for Sutton's termination, Sutton must now establish that the County's proffered reasons are pretext for retaliation, which Sutton "accomplishes by showing that the adverse action would not have occurred 'but for' [the County's] retaliatory motive." *Feist*, 730 F.3d at 454 (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)). To avoid summary judgment, Sutton must show that there is a "conflict in substantial evidence" on this ultimate issue. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 658 (5th Cir. 2012) (quoting *Long*, 88 F.3d at 308). "Evidence is 'substantial' if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Id.* (quoting *Long*, 88 F.3d at 308).

"A plaintiff may establish pretext by showing . . . that her employer's explanation is unworthy of credence." *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 578 (5th Cir. 2020), as revised (Aug. 14, 2020) (citing *Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013)). As such, pretext can be proven by any evidence that casts doubt on the credence of the employer's proffered justification for the adverse employment action. *See id.* (citing *Garcia v. Prof'l Cont. Servs., Inc.*, 938 F.3d 236, 244 (5th Cir. 2019) and *Wheat*, 811 F.3d at 710–11)). "The plaintiff must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001).

Sutton argues that the following evidence demonstrates pretext: (1) the temporal proximity between her protected activity and her termination; (2) the changing reasons for the termination; and (3) testimony that undermines both stated reasons.

13

### --Timing

The Court has already addressed the timing of the termination when examining the causal link. But for the ultimate burden, temporal proximity, standing alone, is not enough. *Strong v. Univ. Healthcare Sys.*, L.L.C., 482 F.3d 802, 808 (5th Cir.2007). The timing must be coupled with additional evidence to provide substantial evidence on but-for causation, which Sutton has.

### --Changing Reasons

Sutton first points out that Reid's reasons for terminating plaintiff have changed, and when the employer gives a series of changing reasons for termination it serves as a classic indicator of pretext. *See Caldwell v. KHOU-TV*, 850 F. 3d 237 (5th Cir. 2017); *Staten v. New Palace Casino*, 187 Fed. App'x. 350, 359 (5th Cir. 2006) (collecting cases where the employer "offer[ed] inconsistent explanations for its employment decisions at different times"). As Reid testified, the reasons for termination were stated in the first 3½ paragraphs of termination letter. Those were the initial reasons. Reid testified inconsistently in his deposition, however, that he fired Sutton because of her poor performance due to issues with non-payment to vendors and for accusing Reid of causing her a "psychological injury."

### --Poor Performance

Sutton says that poor performance is merely pretext because Sutton's poor performance is not mentioned in the termination letter and is not documented; Reid was not aware of any significant issues with Sutton's performance at the time of termination; and Reid's testimony that he would not have fired Sutton for performance issues even if he had known about them prior to her termination.

Sutton argues that Reid's self-serving testimony in laying blame on Sutton's performance rather than the statements made in the termination letter does not have to be believed by the jury. And a jury may not, considering that it cannot be disputed that the termination letter does not mention anything about Sutton's performance. Additionally, Reid confirmed that there is no written documentation of any issues with Sutton's performance on the job. [42-3] 81:7-82:4. Sutton's affidavit testimony states that during her employment with the County, Reid did not issue any performance write-ups, oral counseling, or give any indication that Reid thought her performance was not good. [45-2] at ¶ 10. These facts could rise to disbelief.

Pretext evidence is strongest when "disbelief is accompanied by a suspicion of mendacity." *Reeves*, 530 U.S. at 147. Sutton argues that Reid's testimony shows that at the time of the termination, Reid had only an inkling of performance issues—not enough to follow up or investigate.[7] Additionally, Reid testified that he did not have any specific examples of performance issues—only that beginning in April, they started having "a few issues with people coming in" to report non-payment, but he could not name any specific person who came in. [42-3] 80:19-81:5. Reid testified that it was not until after Sutton was terminated that he found out more specifically that she had not been paying certain bills. [42-3] 82:19-24; 84:2-14. And even more to the point, Reid admitted that, because he learned about the payment issues after Sutton was terminated, the issues could not have impacted his decision to terminate her. [42-3] 83:6-8. Reid went on to testify that if he had known about these issues at the time they were occurring, he would have written up Sutton and given her a chance to explain. [42-3] 83:11-21. Sutton urges that this testimony clearly infers that Reid would not have fired her immediately even if he had been aware of any performance issues.

---

[7] Reid testified: "in April, I'm just saying that's when I started having an inkling that there was [sic] issues." [42-3] 82:11-13.

15

The Court finds that Sutton has raised a genuine issue of material fact as to whether the County's explanation for the termination of Sutton's poor performance is worthy of credence. Considering all the evidence as a whole, the jury would be free to disregard the testimony of Reid that offers poor performance as the reason for the termination rather than those stated in the termination letter. *Cf. Brady v. Fort Bend Cty.*, 145 F.3d 691, 714 (5th Cir. 1998) (noting that jury is free to discredit self-serving testimony regarding reasons for termination).

## --Accusation of Psychological Injury

The County also proffers that, "after Plaintiff's prior behavior within her employment, the recoil against the accusation Mr. Reid caused her psychological injury was a legitimate, non-retaliatory reason to terminate Plaintiff, considering her status as an at-will employee and that the injury Plaintiff complained of was not caused by Mr. Reid or Forrest County." [43] at p. 7 (relying on Reid testimony and the expert report of Dr. Webb).[8]

Sutton believes this argument fares even worse than the "performance" pretext because Sutton's "accusation"" is protected activity; Reid admitted in deposition that Sutton's "accusation" that she suffered "psychological injury" was not only reasonable and in good faith, but true; and nothing in Webb's "expert report" helps Defendant.

As far as Sutton's accusation against Reid being a protected activity, Sutton points to the wording in her text on the morning of June 25: "the psychological work injury [was] sustained in your office yesterday, which is the direct catalyst of the sudden crisis I'm in - stemming from the ongoing hostile work environment I've endured and reported to you since 2023." [42-6]. Apparently, Sutton believed that she had experienced retaliation in the meeting by not being promoted to Comptroller or Deputy Comptroller because of the "drama" over the past two

---

[8] The County also cites *Davis v. BL Development Corp.*, 2:03CV335-P-A, 2005 WL 1876845, *5 (N.D. Miss. 2005) for the proposition that false accusations are legitimate reasons for termination. [43] at p. 7.

16

months—meaning her complaints of racial discrimination.[9] Thus, she was in essence complaining about that retaliation for which she now claims she suffered further retaliation. This is quite a nuanced argument, which the County does not address in its reply. If a jury believes the first instance of possible retaliation, i.e., failure to promote due to racial complaints and EEOC charge, then the Court finds, without affirmatively deciding, this complaint about what occurred in the meeting may very well be protected activity under Title VII.[10]

As for Sutton's accusation being false, it is undisputed that Sutton suffered from past trauma and had some emotional issues as a result. [42-3] 90:3-18; 93: 7-14. Sutton points to Reid's testimony where he indicated that he likely caused her severe emotional distress in the meeting. [46] at p. 18. The County cites to its expert's report to argue that Sutton may have been paranoid or delusional. Sutton counters that, regardless, the records show she was in serious distress following the meeting. These are all genuine issues of fact that a jury must determine.

Given the nuanced nature of this proffered reason, Sutton's known history of emotional issues, coupled with the timing of the termination, along with the wording of the termination letter, and taking all inferences in the light most favorable to Sutton, summary judgment must be denied as to the retaliation claims.

### C. Sutton's Interference Claims

#### 1. ADA interference claim

To establish a *prima facie* case for discrimination "under the ADA, a plaintiff must prove:

---

[9] Sutton points to Reid's testimony where he agreed that in a situation where an employee has made a complaint of racial discrimination and has said they were filing an EEOC charge and then two months later their boss tells her that she may not have a job in a couple of weeks that it would not be unreasonable for that person to think there may be a connection between the two. [46] at pp. 17-18 (citing [42-3] 134:8-23).
[10] The complaint of being injured by the initial claim of retaliation in the meeting would not be protected activity under the ADA or the FMLA because it does not stem from Sutton's disability or her request for leave.

(1) that he has a disability; (2) that he was qualified for the job; and (3) that he was subject to an adverse employment decision on account of his disability." *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 582 (5th Cir. 2020) (citation omitted); *see also See McInnis v. Alamo Community College Dist.,* 207 F.3d 276, 279 (5th Cir. 2000) (stating a fourth element: that the claimant was replaced by a non-disabled person or was treated less favorably than non-disabled employees).

The County believes Sutton's claim fails on the second element because she was not qualified for the job. The County asserts that a plaintiff is assessed as "qualified" or not at the time they were discharged or discriminated against. [43] at p. 12 (citing *Griffith v. Wal–Mart Stores*, 135 F.3d 376, 380 (6th Cir. 1998)). Claiming that Sutton was not qualified for her job at the time she was terminated, the County points to the poor performance issues that have already been addressed. The County claims that Reid's testimony shows deficiencies in Sutton's performance. Notwithstanding, performance is not the same as qualification. Being qualified to perform a job is distinct from performing the job poorly.

Sutton argues that the evidence shows that Sutton was highly qualified for her job in accounts payable. She was chosen out of a pool of nine qualified applicants, performed her job successfully for years, and was promoted and given many raises. [42-3] at 38:21-52:7. Indeed, she was so adept at performing her job functions throughout her employment that she was asked to return to accounts payable in 2023 after she had left the job for a promotion to another department. [42-3] 49:7-23. Other than issues with non-payment of vendors that may have arisen after Sutton was terminated, there is no written performance evaluation or any voiced concerns over Sutton's qualifications to perform the essential functions of her job before her termination.

Sutton has produced sufficient evidence of her qualifications for the job on her *prima facie* case of ADA discrimination to raise a genuine issue of material fact. Therefore, summary judgment

18

on Sutton's ADA discrimination claim will be denied.

### 2. FMLA interference claim

"It is unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" provided under the FMLA. 29 U.S.C. 2625(a)(l). An "interference" claim does not require any proof of intent or unlawful animus; it "merely requires proof that the employer denied the employee his entitlements under the FMLA." *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 788 (5th Cir. 2017). FMLA interference has five elements: "(1) he was an eligible employee; (2) his employer was subject to FMLA requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave; and (5) his employer denied him the benefits to which he was entitled under the FMLA." *Hester v. Bell-Textron, Inc.*, 11 F.4th 301 (5th Cir. 2021). "[A]n employer who interferes with an employee's FMLA rights will not be liable if the employer can prove it would have made the same decision had the employee not exercised the employee's FMLA rights." *Grubb v. Southwest Airlines*, 296 Fed. App'x. 383, 391 (5th Cir. 2008) (quoting *Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 977 (8th Cir. 2005)).

Sutton has alleged that the County terminated her for requesting FMLA leave. *See* [42-8]. The County argues that Sutton's FMLA interference claim cannot stand because Plaintiff was terminated for poor performance and the insubordinate accusation that Mr. Reid caused her psychological injury. The County urges simply that because this termination was valid, Plaintiff's rights under the FMLA ceased to exist, and Forrest County could not have interfered with the same nonexistent right to leave.

As the Court has already found, there are genuine issues of material fact as to the true reasons for Sutton's termination. Viewing the evidence in the light most favorable to Sutton, a reasonable jury could find that the County's termination immediately following Sutton's request

for leave under the FMLA was unlawful interference. Therefore, summary judgement as to Sutton's FMLA interference claim is also denied.

### III. CONCLUSION

Based on the foregoing, the County has failed to carry its burden under Rule 56 to show that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law on any of Latice Sutton's claims in this action. Therefore, it is hereby ORDERED that the Motion for Summary Judgment [42] filed by Defendant, Forrest County, Mississippi is DENIED.

This case will be set for a Final Pretrial Conference at a later date after Plaintiff's counsel notifies the Court that this case is ready to proceed to trial per this Court's prior Order at CM/ECF Doc. No. [50].

SO ORDERED AND ADJUDGED this 31st day of October, 2025.

/s/ Keith Starrett_____
KEITH STARRETT
UNITED STATES DISTRICT JUDGE